FEDERAL INSURANCE COMPANY,
Plaintiff—Appellee,

v.

HOMESTORE, INC., a Delaware
Corporation, Defendant,

and

Peter B. Tafeen, an individual,
Defendant—Appellant.

Clarendon National Insurance Compa-
ny, a New Jersey corporation, Plain-
tiff-counter-defendant—Appellee,

v.

Homestore Incorporated, a Delaware
corporation, Defendant-counter-
claimant,

and

Stuart Wolff, individuals, Defendant-
counter-claimant—Appellant.

Genesis Insurance Company; et al.,
Plaintiffs-counter-defendants,

and

Royal Indemnity Company, Plaintiff-
counter-defendant—Appellee,

v.

Homestore Incorporated, a Delaware
corporation; et al., Defendants-
counter-claimants,

and

Peter B. Tafeen, Defendant-counter-
claimant—Appellant.

Genesis Insurance Company; et al.,
Plaintiffs-counter-defendants,

and

Clarendon National Insurance Compa-
ny, a New Jersey corporation, Plain-
tiff-counter-defendant—Appellee,

v.

Homestore Incorporated, a Delaware
corporation; et al., Defendants-
counter-claimants,

and

Peter B. Tafeen, Defendant-counter-
claimant—Appellant.

Royal Indemnity Company, Plaintiff-
counter-defendant—Appellee,

v.

Homestore Incorporated, a Delaware
corporation, Defendant-counter-
claimant,

and

Stuart Wolff, individuals, Defendant-
counter-claimant—Appellant.

Genesis Insurance Company, Plaintiff-
counter-defendant—Appellee,

v.

David M. Rosenblatt; et
al., Defendants,

Homestore Incorporated, a Delaware
corporation; et al., Defendants-
counter-claimants,

and

Peter B. Tafeen, Defendant-counter-
claimant—Appellant.

Royal Indemnity Company, Plaintiff-counter-defendant—Appellee,

v.

Homestore Incorporated, a Delaware corporation; et al., Defendants-counter-claimants—Appellants,

and

Peter B. Tafeen; et al., Defendants-counter-claimants.

Clarendon National Insurance Company, a New Jersey corporation, Plaintiff-counter-defendant—Appellee,

v.

Homestore Incorporated, a Delaware corporation; et al., Defendants-counter-claimants—Appellants,

and

Peter B. Tafeen; et al., Defendants-counter-claimants.

Genesis Insurance Company, Plaintiff—Appellee,

v.

Homestore Incorporated, a Delaware corporation; et al., Defendants,

and

Stuart Wolff, individuals, Defendant—Appellant.

Genesis Insurance Company, Plaintiff—Appellee,

v.

Homestore Incorporated, a Delaware Corporation; et al., Defendants,

and

David M. Rosenblatt, Defendant—Appellant.

Genesis Insurance Company, Plaintiff—Appellee,

v.

Homestore Incorporated, a Delaware corporation; et al., Defendants—Appellants,

and

David M. Rosenblatt; et al., Defendants.

Federal Insurance Company, Plaintiff—Appellee,

v.

Homestore, Inc., a Delaware Corporation, Defendant,

and

David M. Rosenblatt, an individual, Defendant—Appellant.

Federal Insurance Company, Plaintiff—Appellee,

v.

Homestore, Inc., a Delaware Corporation; et al., Defendants—Appellants.

Federal Insurance Company, Plaintiff—Appellee,

v.

Homestore, Inc., a Delaware Corporation, Defendant,

and

Stuart Wolff, an individual, Defendant—Appellant.

Nos. 03–55995, 03–55996, 03–55997, 03–55998, 03–56351, 03–56365, 03–56445, 3–56468, 03–56472, 03–56488, 03–56508, 03–56509, 03–56641, 03–56644.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 2005.

Decided Aug. 12, 2005.

Fred Baker, Esq., San Francisco, CA, Barry R. Levy, Esq., Daniel J. Gonzalez, Horvitz & Levy, LLP, Encino, CA, Michael F. Perlis, Esq., Stroock & Stroock & Lavan, Los Angeles, CA, for Plaintiff-Appellee.

Julian A. Biggs, Esq., San Francisco, CA, for Defendant.

Jennifer L. Shoda, Esq., Morgan Lewis & Bockius, LLP, San Francisco, CA, Peter B. Tafeen, Parkland, FL, for Defendant-Appellant.

Thomas M. Moore, Esq., Will S. Skinner, Esq., Drinker, Biddle & Reath LLP, Los Angeles, CA, for Plaintiff-Counter-Defendant-Appellee.

**644**

Alan J. Joaquin, Esq., Drinker, Biddle & Reath LLP, Washington, DC, Julian A. Biggs, Esq., Donald W. Brown, Esq., Covington & Burling, San Francisco, CA, for Defendant-Counter-Claimant.

Jennifer L. Shoda, Esq., Morgan Lewis & Bockius, LLP, San Francisco, CA, David M. Halbreich, Esq., for Defendant-Counter-Claimant-Appellant.

Bruce D. Celebrezze, Esq., Frederick D. Baker, Esq., Sedgwick Detert Moran & Arnold, San Francisco, CA, Thomas M. Moore, Esq., Drinker, Biddle & Reath LLP, Los Angeles, CA, for Plaintiff-Counter-Defendant.

Alan J. Joaquin, Esq., Drinker, Biddle & Reath LLP, Washington, DC, Stephen H. Sutro, Duane Morris LLP, San Francisco, CA, for Plaintiff-Counter-Defendant-Appellee.

Julian A. Biggs, Esq., Covington & Burling, San Francisco, CA, Krista J. Martinelli, Esq., Pillsbury Winthrop LLP, Palo Alto, CA, Lori N. Schroeder, Esq., Fairbank & Vincent, for Defendant-Counter-Claimant.

Before: O'SCANNLAIN and RAWLINSON, Circuit Judges, and WHALEY,* District Judge.

---

\* The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

## MEMORANDUM **

In this consolidated diversity appeal, Defendants–Appellants ("Insureds") Homestore, Inc. ("Homestore"), together with current and former Homestore directors and officers, appeal the district court's grant of summary judgment in favor of Plaintiffs–Appellees ("Insurers") Genesis Insurance Company ("Genesis"), Royal Indemnity Company ("Royal"), Federal Insurance Company ("Federal") and Clarendon Insurance Company ("Clarendon"). Appellants contend that the district judge erred in granting summary judgment to the Insurers and declaring the Insurers' directors' and officers' ("D & O") insurance policies were rescinded "as to all Insureds." We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the grant of summary judgment, *see Southern Cal. Painters v. Best Interiors, Inc.*, 359 F.3d 1127, 1130 (9th Cir.2004), and we affirm.

### I

As the facts are known to the parties, we do not recite them here, except as necessary to our disposition. Homestore argues that the Insurers are obligated, as a matter of law, to indemnify them based on the D & O liability insurance policies. The Insurers contend that they are entitled, as a matter of law, to rescind each of the four insurance policies "as to all insureds" based on the material misrepresentations of former Homestore Chief Financial Officer ("CFO") Joseph Shew, who signed all four insurance applications.

On or about August 16, 2001, Homestore submitted a renewal application for D & O liability insurance to Genesis, dated Au-

---

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

gust 2, 2001, for the period from August 4, 2001 through August 4, 2002. The renewal application required that Homestore provide the "[l]atest 10K and 10Q filed with the SEC." The application was signed by then-CFO Joseph Shew. Homestore also obtained excess D & O liability insurance policies from Royal, Federal, and Clarendon for the same coverage period.

Section VIII(C) of the Genesis Policy, entitled "REPRESENTATIONS" provides:

It is agreed that the information and statements contained in the Application for this Policy, a copy of which is attached hereto, and any materials submitted therewith (which are on file with the Insurer and shall be deemed to be attached to and part of the Application as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

By acceptance of this Policy the Directors and Officers and the Company agree:

(1) That the statements in the Application and in any materials submitted therewith are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Insurer under this Policy, and that this Policy is issued in reliance upon the truth of such representations; and

(2) That in the event that the Application, including materials submitted therewith, contains misrepresentations made with the actual intent to deceive, or contain misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, no coverage shall be afforded under this policy (including under insuring Agreement Section

I.B.) for any Director or Officer who did not sign the Application but who knew on the inception date of this Policy the facts that were so misrepresented, and this Policy in its entirety shall be void and of no effect whatsoever if such misrepresentation were known to be untrue on the inception date of the Policy by one or more of the individuals who signed the Application.

The excess policies were issued in conformance with the terms of the Genesis policy.

Based on all outward appearances, Homestore was performing well during FY 2000 and the first three quarters of 2001. Homestore's filings with the SEC disclosed growth in advertising revenues throughout the period. On December 21, 2001, however, Homestore announced that its Board of Directors was conducting a review of the company's financial statements, and that it would be making restatements of historical earnings at the conclusion of the review. In March 2002, Homestore filed restated financials for FY 2000 and the first three quarters of 2001, revealing that Homestore had significantly overstated its advertising revenues. As a result of the financial restatements, multiple securities claims and shareholder derivative suits were filed.

On September 25, 2002, a federal information was filed against Homestore's then-CFO Joseph Shew, and two former Homestore officers. The information charged that Mr. Shew conspired to commit securities fraud, in violation of federal law. On October 21, 2002, Mr. Shew pleaded guilty to the conspiracy charge and admitted that during the first three quarters of FY 2001, he conspired to overstate Homestore's advertising revenue to artificially inflate the company's revenues, and filed false 10Qs with the SEC.

## II

■ The parties do not dispute that misrepresentations were made on the Form 10Q submitted to the SEC for the first quarter of FY 2001. Appellants assert, however, that the misrepresentations contained in the 10Q were not material to the Insurers' acceptance of risk.

Because this is a diversity action that involves interpretation of an insurance contract, California insurance law governs the analysis. *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.,* 312 F.3d 976, 981 (9th Cir.2002). Under California Insurance Code § 334, "[m]ateriality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Materiality may be determined as a matter of law where no reasonable person can disagree as to the materiality of the misrepresentation. *See Cummings v. Fire Ins. Exch.,* 202 Cal.App.3d 1407, 249 Cal.Rptr. 568, 574 (Cal.Ct.App.1988). "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Thompson v. Occidental Ins. Co.,* 9 Cal.3d 904, 109 Cal. Rptr. 473, 513 P.2d 353, 360 (1973) (citations omitted); *see also Jaunich II v. National Union Fire Ins. Co.,* 647 F.Supp. 209, 211 (N.D.Cal.1986) (holding requested financial information was material because those very misrepresentations could ripen into claims covered by the policy).

Genesis required that Homestore's most recent 10Q filings be submitted as part of the application. Section VIII(C) of the Genesis insurance policy application explic-

itly provides that materials submitted with the policy constitute "representations" by the directors, officers, and Homestore. Therefore, the Form 10Qs were representations. Section VIII(C)(1) further provides that representations "shall be deemed material to the acceptance of the risk or hazard" and that the "Policy is issued in reliance upon the truth of such representations."

Based upon the plain language of the contract, we find that then-CFO Shew's made material misrepresentations by submitting Homestore's most recent 10Q. An ordinary layperson would understand that the veracity of past SEC filings are a key component in the determination of whether to issue coverage for security claims.[1]

## III

The Appellants maintain that Section VIII.C(2) of the Genesis policy, allowing rescission, is inconspicuous and, therefore, should not be given effect. This argument was not properly raised below. Generally, this Court will not consider arguments made for the first time on appeal, and we decline to do so here. *See Harden v. Roadway Package Sys., Inc.,* 249 F.3d 1137, 1141 (9th Cir.2001) (*citing Bolker v. Commissioner of Internal Revenue,* 760 F.2d 1039, 1042 (9th Cir.1985)).

## IV

■ The district court found that Section VIII.C(2) unambiguously provided that the Insurers could rescind coverage "as to all Insureds" if one or more individual signing the application had knowledge of material misrepresentations in the application. Appellants assert that the poli-

---

1. Because we find the misrepresentations were material to the risk assumed, we do not reach the question of whether the misrepre-

sentations were made with actual intent to deceive.

cy language is ambiguous and that the trial court's interpretation was error. Appellants argue that because the policy is ambiguous, we should read the policy to provide coverage to "innocent" directors and officers, despite the fact that then-CFO Shew had knowledge of material misrepresentations in the application.

The interpretation and meaning of contract provisions are questions of law reviewed *de novo*. *See United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1264 (9th Cir.2003). Under California law, courts must construe insurance policy terms so as to give effect to the "mutual intention" of the parties at the time the policy was issued, and this intent should be inferred, to the extent possible, "solely from the written provisions of the [policy]." *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1212–13 (2003) (citation and internal quotation marks omitted); *see also Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (same). The words of an insurance policy, "are to be understood in their ordinary and popular sense, ... unless used by the parties in a technical sense, or unless a special meaning is given them by usage." Cal. Civil Code § 1644; *Ray v. Farmers Ins. Exch.*, 200 Cal.App.3d 1411, 246 Cal.Rptr. 593, 595 (1988) (words "are to be construed according to the plain meaning a layman would ordinarily attach to them"). If policy language is "clear and explicit, and does not involve an absurdity[,]" it governs. Cal. Civil Code § 1638.

A close parsing of the language of Section VIII.C(2) reveals that the clause anticipates rescinding coverage to all Insureds without knowledge of misrepresentations, based upon material misrepresentations known to a signer. The clause provides that the policy will be void in its entirety if misrepresentations are known by "one or more of the individuals who signed" the policy. The clause does not provide that the policy will be void only as to the particular signer who has knowledge of misrepresentations. The language "one or more" indicates that the number of insureds affected by a knowing misrepresentation of a single signer will consist of a greater number than just such signer. In addition, the phrase "in its entirety shall be void and of no effect whatsoever" describes the subject "the Policy," and there is no indication that the Policy would be void as to only a particular individual. A reading of the contract as a whole does not alter this meaning.[2]

The Appellants argue that *Watts v. Farmers Ins. Exch.*, 98 Cal.App.4th 1246, 120 Cal.Rptr.2d 694 (2001), is on all fours with the case at hand. The court in *Watts*, however, relied on California Insurance Code § 2071, which deals only with fire insurance contracts, and is not applicable to D & O Liability Insurance contracts. *Id.* at 706. In *Watts*, the court considered the California Standard Form Fire Insurance Policy and held that "since the language adopted by the Legislature for the standard form does not specifically state that the act of any insured will be attributed to all insureds, the intent is that coverage be severable and that an innocent co-insured be able to recover for his or her proportionate share of the damaged property." *Id.* The D & O liability insurance policies *sub judice*, however, are governed by California Insurance Code § 650, rather than § 2701. California Insurance Code § 650 provides that "rescission [based on misrepresentation] shall apply to

---

2. Because we find that the language of the policy is unambiguous, we decline to examine extrinsic evidence proffered by the Appellants.

all insureds under the contract, including additional insureds, unless the contract provides otherwise." Therefore, the holding of *Watts* is distinguishable from the present case.

For these reasons, we hold that the clear and explicit language of Section VIII. C(2) of the Genesis D & O policy is unambiguous, and allows for the rescission of the policies "as to all Insureds" based upon the misrepresentations of then-CFO Shew in the Genesis policy application.

## V

Appellants urge the panel to hold that California's public policy prevents the Insurers from rescinding coverage for "innocent" directors and officers, based on the misrepresentations of the signer of an application. We hold that California public policy does not dictate a different result.

AFFIRMED.